UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DOUGLASS W. HILL,

        Plaintiff,       :

    v.                             Case No. 2:23-cv-2243
                                  Chief Judge Sarah D. Morrison
                                  Magistrate Judge Chelsey M.
BRIGGS & STRATTON LLC, *et*       Vascura
*al.*,                       :

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Midwest Can Company's Motion to Exclude Andrew Schmit's Testimony or, Alternatively, to Limit His Testimony (ECF No. 120). Douglass Hill responded (ECF No. 126), and Midwest replied (ECF No. 137). Mr. Hill then filed a Motion for Leave to File Surreply *instanter* (ECF Nos. 159, 159-1), which the Court **GRANTS** and it considers the Surreply here.

For the reasons below, Midwest's Motion (ECF No. 120) is **DENIED**.

### I.    BACKGROUND

Mr. Hill was severely burned by a fire that started when he attempted to refill his lawn mower with gasoline. He originally brought this action for product liability, breach of express or implied warranty, and negligence against multiple defendants. The case proceeded through discovery and Mr. Hill has since amended his complaint, bringing a single cause of action for product liability only against

Midwest. Cross-Motions for Summary Judgment have been filed. The instant Motion relates to Mr. Hill's expert witness, Andrew Schmit.

Pursuant to the case schedule, Mr. Hill served Schmit's first expert report on January 15, 2025. (ECF No. 126-1.) Midwest served its expert report on February 20, 2025, and just over a month later, Schmit produced a supplemental report where he challenged Midwest's expert findings. (ECF Nos. 126-2 and 126-4.) Not to be outdone, Midwest produced its own supplemental report on June 5, 2025. (ECF No. 126-5.) Meanwhile, the parties continued to engage in written discovery. (*See* ECF No. 120, PAGEID# 888.)

On July 25, 2025, Schmit produced a second supplemental report (his third report), which is, in part, the subject of this Motion. (ECF No. 120-3.) There, Schmit included a "design defect theory," arguing that Midwest's screw caps[1] were defective in design due to a sharp corner, stress concentrators, and a corner radius to wall thickness ratio at the thread termination of the screw cap that causes circumferential cracking. (ECF No. 120, PAGEID# 888.) Two days later, Midwest deposed Schmit. (ECF No. 126, PAGEID# 1021.)

Midwest then filed this Motion, moving to exclude Schmit's opinions as unreliable under Fed. R. Evid. 702, or, in the alternative, moving to exclude Schmit's design defect theory as untimely under Fed. R. Civ. P. 26. Since the filing of this Motion, Midwest's expert witnesses issued a 23-page second supplemental report that addressed Schmit's third report, and they have been deposed regarding

---

[1] The "screw cap" is also referred to as the collar, nut, or cap.

the same. (ECF No. 159-1, PAGEID# 1708.) In addition, the Court granted Mr. Hill's motion for leave to file a First Amended Complaint and the dispositive motion deadline was extended to November 13, 2025. (*Id.*)

## II.    MOTION TO EXCLUDE UNDER FED. R. CIV. P. 26

Midwest seeks to exclude the "design defect theory" from Schmit's third report, asserting that it is not a proper supplement under Fed. R. Civ. P. 26.

A party that has disclosed an expert report is under an ongoing responsibility to supplement that report "in a timely manner if the party learns that in some material respect the disclosure … is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties[.]" Fed. R. Civ. P. 26(e)(1)(A). A supplement under Rule 26 is limited to "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Antioch Co. Litig. Trust v. McDermott Will & Emery, LLP*, No. 3:09-cv-218, 2016 WL 8257680, *2 (S.D. Ohio July 15, 2016) (Black, J.). Its purpose "is to inform the opposing party of any changes or alterations, not to provide an extension of the deadline by which a party must deliver its expert information." *Hobart Corp. v. Dayton Power and Light Co.*, No. 3:13-cv-115, 2024 WL 4284652, *6 (S.D. Ohio Sept. 24, 2024) (Rice, J.). A court should exclude an expert's supplemental report if it is provided "so late in the game that it deprives the opposing party of a meaningful opportunity to respond or prepare for deposition or trial." *Yerkes v. Ohio State Highway Patrol*, No. 2:19-cv-

3

02047, 2023 WL 4836947, *1 (S.D. Ohio July 28, 2023) (Sargus, J.) (citation modified).

Mr. Hill argues the design defect theory in Schmit's third report was the result of evidence later-produced by Midwest that led him to identify the precise location where the screw cap was splitting. (ECF No. 126, PAGEID# 1024.) That evidence included photos produced on July 25, California Air Resources Board (CARB) testing information produced on June 24 and July 25, cracked Midwest screw caps, and Consumer Product Safety Commission (CPSC) reports. (*Id.*; Schmit Depo., 28:22–30:5, ECF No. 126-7, PAGEID# 1273–74.)

Midwest does not dispute that this evidence was produced after Schmit's original and supplemental report. Rather, it argues that Schmit had all the evidence needed to reach the same conclusion in his first report. It bases this argument on a favorable-to-it interpretation of Schmit's deposition testimony and the benefit of hindsight, wrapped in a conclusory argument as to what Schmit *should* have known when he submitted his first report.

In Schmit's first report, he provided several hypotheses about how the screw cap might have cracked based on the available evidence. (*See* ECF No. 120-1.) But after he had the benefit of Midwest's later-produced evidence, he identified and analyzed a potential design defect and formed a conclusion regarding the same. (*See* ECF No. 120-3, PAGEID# 955–56; Schmit Depo., 29:18–30:5.) Accordingly, he amended his hypotheses from his first report. Thus, his third report was necessary

due to new information, not due to a desire to rewrite or correct the conclusions originally reached.

No matter, says Midwest, because even if the later-produced evidence was necessary for his conclusion, Mr. Hill did not request it until after Schmit's first report. But this argument lacks merit. First, it assumes Midwest had no obligation to produce what was included in the later-produced evidence until *after* Schmit submitted his first report. Second, it ignores that "discovery evolves over time as theories of liability, defense, and relief begin to take shape and may not come into focus until the end of discovery." *Ideal Innovations, Inc. v. United States*, 167 Fed.Cl. 314, 333 (Fed. Cl. 2023). And while on-going discovery might not excuse a belated or improper expert disclosure, it can, as here, lead to uncovering information that necessitates revision of a prior conclusion.

Lastly, the timing of Schmit's third report did not deprive Midwest "of a meaningful opportunity to respond or prepare for deposition or trial." *Yerkes*, 2023 WL 4836947, at *1. Although Schmit's third report was issued only two days before his deposition, nothing in the record suggests that Midwest sought to reschedule the deposition or to leave it open. Further, since Midwest filed this Motion, its own experts responded with a 23-page supplemental report, provided deposition testimony, and the dispositive motion deadline was extended. (ECF No. 159-1, PAGEID# 1708.)

Accordingly, the Court finds that Schmit's third report is a proper supplement under Rule 26.

### III.    MOTION TO EXCLUDE UNDER FED. R. EVID. 702

Midwest moves to exclude Schmit as an expert witness, alleging that his methodology and opinions are unreliable. The admissibility of expert testimony is governed by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Rule incorporates the Supreme Court's instruction in *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), requiring the trial court to serve as a "gatekeeper," tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Courts are afforded "considerable leeway" both in determining *whether* to admit expert opinion testimony and *how* to test its reliability and relevance to the case at bar. *Kumho Tire*, 526 U.S. at 152. That said, the Federal Rules of Evidence provide a "permissive backdrop," favoring the admission of expert opinion testimony. *Daubert*, 509 U.S. at 588–89.

The Sixth Circuit employs a three-pronged approach in Rule 702 analysis. "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Rule 702). The party offering the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

### a. Schmit is qualified.

Schmit received a bachelor's and master's degree in mechanical engineering from Texas Tech University. (ECF No. 120-1, PAGEID# 935.) He is a licensed Professional Engineer in 10 states. (*Id.*) And he has been "providing analysis of mechanical failures involving property loss, personal injury, and product liability" with Envista since 2014. (*Id.*)

In a single paragraph, Midwest argues Schmit is not qualified because he has never investigated gas can screw caps before. (ECF No. 120, PAGEID# 894.) But identical experience is not the test. Instead, it is whether Schmit's experience provides the necessary foundation to answer the question at hand. *See, e.g.*, *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."). The answer here is yes.

### b. Schmit's opinion is relevant.

To determine relevance, courts consider whether the proffered expert's testimony is relevant under Rule 401, which provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue .... Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citation modified). Under the relevance requirement "there must be a 'fit' between the inquiry in the case and the testimony, and expert testimony that does not relate to any issue in the case is not relevant and therefore not helpful." *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993).

Mr. Hill filed his First Amended Complaint after Schmit's third report. (*See* ECF No. 148.) There, Mr. Hill brings a product liability claim against Midwest. To prevail, Mr. Hill must establish three elements: 1) the product was defective; 2) the defect existed when the product left the defendants' control; and 3) the defect directly and proximately caused his injury. *Butts v. OMG, Inc.*, 612 F. App'x 260, 262 (6th Cir. 2015). Schmit's third report addresses the first element and Midwest does not argue otherwise.

### c. Schmit's opinion is reliable.

In Schmit's third report, he details the steps he took to identify the manufacturer of the screw cap in question, narrowing it down to three possible

companies. (ECF No. 126, PAGEID# 1029.) From there, he conducted further analysis to confirm the "most probable manufacturer of the subject nut" was Midwest. (*Id.*) Schmit used what he learned from the later-produced evidence to investigate a potential design defect. (*Id.*, PAGEID# 1030.) Schmit's work included identifying a "consistent orientation" of the cracking, cutting a cross-section through an exemplar screw cap, and taking microscopic measurements. (*Id.*) Ultimately, Schmit concluded "Midwest defectively designed the 3020 nut associated with the 4240 spout, causing it to be susceptible to premature failure due to elevated stress during normal use." (*Id.* (citing ECF No. 126-6).)

Midwest argues that Schmit's third report is not reliable, challenging both his methodology and his failure to fully investigate other potential screw caps. As for Schmit's methodology, Midwest argues it was improper yet provides no analysis of the methodology he used. That is, Midwest highlights tests and analysis Schmit *did not* do but ignores the methodology he used. (*See, e.g.*, ECF No. 120, PAGEID# 895.) But that is not the proper focus of Rule 702. *See Daubert* at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions they generate."). Midwest's methodology argument goes to the weight of Schmit's opinions, not their admissibility. *See id.* at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Midwest's argument that Schmit failed to fully investigate other screw caps is similarly flawed because it ignores that Schmit concluded the Midwest screw cap was what Mr. Hill used. (*See* ECF No. 120-3, PAGEID# 961 ("Envista considers it unlikely that Mr. Hill would not have experienced a leak previously had the Kerykwan nut been installed."); *see also id.*, PAGEID# 963 ("Envista considered it unlikely that the subject nut was the Briggs and Stratton nut.").) But it cannot be said Schmit failed to consider the other screw caps just because he ruled them out earlier than Midwest thinks he should have. This issue can be explored on cross-examination, but it does not make Schmit's opinion inadmissible.

In sum, the Court deems Schmit qualified, and finds that his third report is relevant, reliable, and admissible.

## IV.   CONCLUSION

Midwest's Motion to Exclude Andrew Schmit's Testimony or, Alternatively, to Limit His Testimony (ECF No. 120) is **DENIED**.


**IT IS SO ORDERED.**


/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**